# COURT OF APPEALS OF VIRGINIA

## Record No. 0730-25-1

JOHN HADJIKAKOS

v.

JAMES T. LANG, ET AL.

Present: Judges Ortiz, Chaney and Frucci

Argued by videoconference

Opinion Issued August 11, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Steven M. Oser (Steven M. Oser, P.C., on briefs), for appellant.

Julie S. Palmer (Harman, Claytor, Corrigan & Wellman, on brief), for appellees.

## MEMORANDUM OPINION BY
## <u>JUDGE STEVEN C. FRUCCI</u>

Following a hearing, the Circuit Court of the City of Newport News granted the Plea of

Statute of Limitations and Motion to Dismiss filed by James T. Lang and Pender & Coward

(collectively the "Firm") and dismissed John Hadjikakos's "Breach of Contract Professional

Malpractice" suit. On appeal, Hadjikakos contends that the circuit court made various errors that

led it to incorrectly apply a three-year statutory limitations period rather than a five-year period

and that, alternatively, it found the wrong date for the statutory limitations period to begin to run.

For the following reasons, this Court affirms the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Hadjikakos first retained the Firm as legal counsel in 2007. The Firm represented Hadjikakos, and a variety of business entities owned or operated by him, on numerous legal matters over the years. In July 2012, Hadjikakos requested the Firm represent an entity owned by him called Receivables Management, LLC ("Receivables"). Receivables had acquired a defaulted note and deed of trust from Community Bank. The debtor on the note and deed of trust was Elias Doulgerakis, who had pledged certain real estate and his membership interest in certain limited liability companies as collateral. Hadjikakos wanted the Firm to represent Receivables in connection with perfecting its security interest in the collateral and to foreclose on the limited liability companies. The Firm prepared a July 13, 2012 engagement letter ("engagement letter") for the representation of Receivables. The engagement letter was signed by Lang, listed his current fees, set forth obligations of the representation, bore the subject line of "Security Interest of Receivables Management, LLC," and stated how Hadjikakos "asked [him] to help . . . with perfecting the security interest of Receivables . . . in certain collateral . . . and, following same, foreclosure on the collateral." The Firm created a matter ledger report in the name of Receivables (the "matter ledger report"), which was a record of time entries, costs advanced, invoices, and client payments. The matter ledger report showed a client code of "14537," a matter code of "52918," and a subject of "Receivables Management, LLC – Security Interest." The Firm proceeded to perfect Receivables's security interest and foreclose on the collateral. In November 2012, the Firm sent notice of the foreclosure to Doulgerakis. According to Lang, this ended the matter covered by the engagement letter. The matter ledger report showed that Receivables continued to be billed for various matters over time.

In October 2012, Doulgerakis filed several lawsuits against Hadjikakos and various entities owned by him. One of the lawsuits was an October 2012 motion for judgment against Hadjikakos,

Olympia Properties of Norfolk, LLC, Beachcomber Apts., LLC, Bo-Ling, LLC, T.V. Dinners, Inc., and Olympia Community Development, Inc., brought in the Circuit Court of Newport News (the "Doulgerakis litigation"). In 2016, Lang and Hadjikakos agreed that the Firm would seek to have the Doulgerakis litigation stricken from the court's docket for failure to prosecute the case. In 2018, the Doulgerakis litigation was discontinued for lack of activity.

In February of 2019, the Firm was served with a pleading styled "motion for reinstatement" after Doulgerakis sought to reinstate the motion for judgment. Lang informed Hadjikakos about the motion. After, Lang emailed Hadjikakos and proposed actions that Hadjikakos could take in response to this filing, to which Hadjikakos emailed that the Firm could pursue the suggested course of actions (the "February 2019 emails"). The Firm proceeded to represent Hadjikakos and his entities in the Doulgerakis litigation.

In October 2019, Lang emailed an associate, asking him to prepare a promissory note, secured by a deed of trust, for Hadjikakos to sign, requiring him to pay for the Firm's services (the "promissory note"). In addition to another matter's code, Lang included the matter code for the engagement letter representation. Lang's associate prepared the promissory note, which stated that:

> Maker shall make minimum monthly payments of the entire
> outstanding balance due to Noteholder for accrued legal fees and
> costs (fees), for legal services provided by Noteholder to Maker,
> pursuant to engagement letter from Noteholder to Receivables
> Management, LLC dated July 13, 2012 and engagement letter from
> Noteholder to John Hadjikakos dated October 7, 2019 and as shown
> in monthly invoices from Noteholder to Maker ("Invoices") to
> accrued Interest on the first day of each month. . . .

Later, Lang sent the promissory note to Hadjikakos in an email stating: "Dear John, Attached pls find a Credit Line DOT and Note to Secure P&C's entitlement to be paid for the legal work we are doing in the Doulgerakis litigation." Hadjikakos signed the documents. At a later hearing, Lang testified that it was a mistake to include the July 13, 2012 engagement letter.

The Doulgerakis litigation ultimately ended with a settlement agreement.  The circuit court entered the final order on July 24, 2020.  On August 12, 2020, the Firm had a meeting with opposing counsel to finalize the exchange of settlement documents and to retrieve documents that were protected by a protective order.  On January 8, 2021, and January 13, 2021, billing invoices reflect that Hadjikakos was given advice by the Firm on whether the filing of an IRS Form 1099 would violate the terms of the settlement agreement.  On May 8 and May 9 of 2023, Hadjikakos and Lang emailed about Hadjikakos's obligation to execute a certificate of satisfaction under the terms of the settlement agreement.

On January 25, 2024, Hadjikakos filed a complaint against the Firm, alleging they had breached the standard of care in their handling of the Doulgerakis litigation by making a general appearance on Hadjikakos's behalf instead of moving to dismiss the case on grounds that Doulgerakis had failed to serve his complaint within one year of filing.[1]  The Firm filed a Plea of Statute of Limitations and Motion to Dismiss, arguing that a three-year statute of limitations applied to the claim and that the complaint was untimely.[2]

The circuit court held evidentiary hearings on the plea in bar.[3]  The circuit court issued a letter opinion on March 5, 2025, and granted the plea in bar.  It ruled that a three-year statute of

---

[1] The Firm filed a Motion Craving Oyer to obtain the contract Hadjikakos was using as the basis for his claim.  After agreement from the parties, the circuit court granted the motion and stated that the engagement letter was the purported written contract that Hadjikakos was relying on for his suit.  Hadjikakos continued to portray the engagement letter as the written contract as the basis of suit for most of the proceedings below.  Hadjikakos never amended any of his pleadings to allege any additional written contract.

[2] The complaint asserted other counts, to which the Firm filed a demurrer that was granted by the circuit court.  The circuit court's rulings on those pleadings are not before the Court.

[3] The first hearing was in September of 2024.  The hearing was carried over to January 14, 2025.  Prior to that date, Hadjikakos filed an amended complaint, to which the Firm filed another plea in bar of statute of limitations that was argued on January 14, 2025.

limitations applied because it found that "the contract for [the Firm] to defend [Hadjikakos] and his entities on the Doulgerakis litigation was an implied-in-fact contract." It also found that the Firm performed their "last act to close out the litigation for which they were hired" on August 12, 2020. Therefore, the circuit court concluded that Hadjikakos's complaint was time-barred. When making this conclusion, the circuit court found that the time entries in the matter ledger report was "a ministerial act relating to fees owed and was in no way related to advice or legal counsel in connection with the undertaking of" the Doulgerakis litigation. Regarding the January 2021 response, the circuit court found that it was "distinct from what Defendants were hired to do" and constituted a "separate undertaking[]." Hadjikakos filed a motion to reconsider, which the circuit court denied. Hadjikakos appeals.

ANALYSIS

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Doe v. Green*, 81 Va. App. 556, 564 (2024) (quoting *Cornell v. Benedict*, 301 Va. 342, 349 (2022)). "The movant bears the burden of proof on such a plea, and if evidence is presented ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Id.* (quoting *Cornell*, 301 Va. at 349). "[I]t is well-established that 'statutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception to their application.'" *Smith Dev., Inc. v. Conway*, 79 Va. App. 360, 374 (2024) (quoting *Casey v. Merck & Co.*, 283 Va. 411, 416 (2012)).

I. Statute of Limitations Period

Hadjikakos claims that the five-year statute of limitations for written contracts should apply to this case, rather than the three-year statute of limitations for unwritten contracts that was applied by the circuit court. He contends that the engagement letter was a written contract and

that the circuit court erred by ruling that the engagement letter was not subsequently modified and ratified to include the Doulgerakis litigation.

"[A]n action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract." *Oleyar v. Kerr*, 217 Va. 88, 90 (1976). Therefore, the "statute of limitations for legal malpractice actions is the same as those for breach of contract." *Shipman v. Kruck*, 267 Va. 495, 501 (2004); *see Oleyar*, 217 Va. at 90. Generally, when a contract is "in writing and signed by the party to be charged," the breach of contract claim must be brought "within five years" after the cause of action accrues. Code § 8.01-246(A)(2). Alternatively, when the claim is based on an "unwritten contract, express or implied," the claim must be brought within three years of accrual. Code § 8.01-246(A)(4). A legal malpractice action accrues when the attorney last provided legal services on the "particular undertaking or transaction" at issue, even if the attorney continues to represent the client on "other undertakings or transactions." *Keller v. Denny*, 232 Va. 512, 518 (1987). "The proper inquiry is not whether a general attorney-client relationship has ended, but instead, when the attorney's work on the *particular undertaking* at issue has ceased." *Shipman*, 267 Va. at 505 (emphasis added). This "continuous-representation rule" acts as "a tolling principle." *Moonlight Enters. v. Mroz*, 293 Va. 224, 230 (2017). "The tolling period extends to, and the limitation period thus begins on, the date when the attorney renders his 'last professional services' related to the particular undertaking." *Id.* at 231 (quoting *Keller*, 232 Va. at 519).

As an initial matter, we note that the circuit court found that "the [e]ngagement [l]etter [was] not a written contract for the defense of the Doulgerakis litigation," a ruling Hadjikakos does not assign error to on appeal. As such, any claim Hadjikakos makes that the circuit court erred in finding that the engagement letter "did not contemplate the inclusion of the Doulgerakis litigation" is not properly before this Court. *See* Rule 5A:20(c)(1). As a result, we need not

address whether the circuit court correctly found that the engagement letter was not originally a written contract that included the Doulgerakis litigation.

Turning to Hadjikakos's arguments that later acts, the Firm's intra-office emails, the email from the associate in the Firm, and the promissory note, modified the engagement letter to include the Doulgerakis litigation, "a course of dealing by contracting parties, considered in light of all the circumstances, may evince a mutual intent to modify the terms of their contract." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73 (1983). "But the circumstances surrounding the conduct of the parties must be sufficient to support a finding of a 'mutual intention' that the modification be effective." *Id.* (quoting *Warren v. Goodrich*, 133 Va. 366, 388 (1922)). "[S]uch intention must be shown by 'clear, unequivocal and convincing evidence, direct or implied.'" *Id.* (quoting *Warren*, 133 Va. at 389). Here, the record supports the circuit court's determination that "the evidence presented in this case [did] not establish by clear, unequivocal, and convincing evidence that there was a mutual intention to modify the [e]ngagement [l]etter to include the defense of the Doulgerakis litigation." No evidence was presented that the parties both intended for the engagement letter to extend beyond the Firm representing Receivables in regard to perfecting its security interest and initiating foreclosure. Rather, Lang testified that such services were completed after the foreclosure sale and notice sent to Doulgerakis. Even if this Court were to conclude that such actions did not complete the Firm's obligation under the engagement letter, there still was no evidence presented to the circuit court that Receivables and the Firm mutually meant to extend the engagement letter to additional litigation services involving other parties.[4] As such, the circuit court did not err in finding that neither the

---

[4] Hadjikakos specifically argues that: (1) the promissory note modified and ratified of the engagement letter; and (2) that the Firm's continued billing to the matter code given to the engagement letter services, the language in the Firm's intraoffice emails, and the Firm's reference to the engagement letter in the promissory note should have led the circuit court to conclude that the engagement letter was subsequently modified to include the Doulgerakis

specified later actions and emails nor the promissory note modified the engagement letter to include the Doulgerakis litigation.[5]

## II. The Running of the Statute of Limitations

Alternatively, Hadjikakos argues that the circuit court selected the wrong date for the statutory limitations period to begin to run. The circuit court found that the Firm's services rendered in connection with the Doulgerakis litigation terminated on August 12, 2020, after the Firm met with opposing counsel to retrieve documents that were protected by a protective order and involved in the settlement agreement. It concluded, therefore, that the statute of limitations began to run on August 12, 2020. Hadjikakos argues that "September 24, 2020, January 8, 2021 and January 13, 2021 time entries" in the matter ledger report and the Firm's January 2021 response to Hadjikakos's question about the IRS Form 1099 should have been used to determine a later start date for the statutory limitations to begin to run.

> [W]hen malpractice is claimed to have occurred during the
> representation of a client by an attorney with respect to a particular
> undertaking or transaction, the breach of contract or duty occurs

---

litigation. However, he does not assign error to the circuit court's determination that the Doulgerakis litigation went beyond the scope of services required under the engagement letter and provides no legal authority or argument for why the promissory note, which also referenced other agreements, and billing would alter the extent of the services the Firm owed beyond the engagement letter and to additional parties.

[5] Hadjikakos also argues that the circuit court erred by not finding the February 2019 emails to be an applicable written contract that would allow for a five-year statute of limitations period. However, Hadjikakos did not allege that the February 2019 emails were the contract that the Firm breached—in fact, with the motion craving oyer, Hadjikakos both pled and continued to claim that the engagement letter was the written contract underlying this suit. It was not until a later response in opposition to the Firm's plea in bar that Hadjikakos even began to contend that another written contract could be applicable, and even then, Hadjikakos never amended his complaint to allege a second written contract.

Furthermore, in order for an agreement to constitute a written contract, the "essential terms of the agreement must be obvious on the face of the writing without recourse to parol evidence." *Janus v. Sproul*, 250 Va. 90, 91 (1995). Here, the February 2019 emails did not include the essential term of what the consideration would be in exchange for the Firm's services. Therefore, the circuit court did not err in not utilizing the February 2019 emails to apply a five-year statute of limitations period.

- 8 -

and the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated, notwithstanding the continuation of a general attorney-client relationship, and irrespective of the attorney's work on other undertakings or transactions for the same client.

*Keller*, 232 Va. at 518. Therefore, "[t]he proper inquiry is not whether a general attorney-client relationship has ended, but instead, when the attorney's work on the particular undertaking at issue has ceased." *Shipman*, 267 Va. at 505. "If malpractice is alleged with respect to 'a single, isolated act, Code § 8.01-230 . . . dictates that the statute of limitations begins to run when that act is performed, regardless of the time of its discovery.'" *Id.* (alteration in original) (quoting *Keller*, 232 Va. at 518-19); *see* Code § 8.01-230 (mandating that the right of action shall accrue at the time of the breach).

Here, the billing time entries on the matter payment ledger did not involve providing additional or continuing "professional services" to further the Doulgerakis litigation. *See Keller*, 232 Va. at 518; *see also Shipman*, 267 Va. at 507 (declining to toll the statute of limitations on the basis of payment, in part because it would provide an "aggrieved client with the power to forestall the running of the statute of limitations by the deferral of payment, regardless of whether he has already suffered damages sufficient to give rise to his cause of action"). Similarly, the response to the question about the tax form was not "inherent in the continuing nature" of the Firm's relationship with Hadjikakos in providing legal services for the Doulgerakis litigation, but rather it arose "merely upon [Hadjikakos's] specific request for advice." *Keller*, 232 Va. at 519. As such, the circuit court did not err in finding that these activities were separate undertakings and did not impact when the statute of limitations began to run.

## CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*